## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT JONES, individually and as )
a personal representative of the )
estate of Melvin D. Jones, and )
KAY JONES, )
       )
              Plaintiffs, )
vs. )       Case No. 07-CV-0606-MJR-DGW
       )
DEPUTY SHERIFF BART HILEMAN, )
SERGEANT RON STAMP, )
DEPUTY SHERIFF ROBBIE MCGEE, )
OFFICER JOHN BARR, )
OFFICER JOHN WRIGHT )
OFFICER STEPHEN LAWRENCE, )
OFFICER DALE FOSTER, )
OFFICER BRYAN WATKINS, )
CITY OF ANNA, )
and UNION COUNTY, ILLINOIS, )
       )
           Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, District Judge**:

### A. Introduction

On August 27, 2007, Plaintiffs Robert Jones, individually and as the personal

representative of Melvin Jones, and Kay Jones brought this suit alleging deprivation of their Fourth

Amendment rights under 42 U. S. C. §§ 1983 and 1985 and alleging a wrongful death claim under

Illinois law (Doc. 2).

On October 10, 2007, Defendants Dale Foster, Bryan Watkins, and the City of Anna,

Illinois (collectively "the Anna Defendants") moved for dismissal in accordance with **FEDERAL**

**RULE OF CIVIL PROCEDURE 12(b)(6)** (Doc. 24). On November 15, 2007, Jones submitted a

response (Doc. 37).

Additionally, on November 2, 2007, Defendants Hileman, Stamp, McGee, and Union County, Illinois (collectively "the Union County Defendants") moved for dismissal in accordance with **Rule 12(b)(6)** (Doc. 31). The Union County Defendants' arguments are essentially the same as the Anna Defendants' arguments. Plaintiffs filed a response on December 5, 2007 (Doc. 39).

Having reviewed the parties' filings, this Court now **GRANTS IN PART AND DENIES IN PART** the Defendants' motions to dismiss (Docs. 24 & 31).

### B. Legal Standards

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULE OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. V. Twombly*, --U.S.--, 127 S.Ct. 1955, 1965 (2007); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

Stated another way, the question on a Rule 12(b)(6) motion is whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which the suit rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Mosely v. Board of Education of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). Additionally, although federal complaints need only plead claims, not facts, the pleading regime created by *Bell Atlantic* requires the complaint to allege a plausible theory of liability against the defendant. *Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 596 (7th Cir. 2008); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803-04 (7th Cir. 2008).

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. **526 F.3d 1074, 1083 (7th Cir. 2008).** "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." ***Id.***; ***Accord Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").**

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. ***Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.), *cert. denied*, 128 S. Ct. 357 (2007); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006); *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989).**

### C. Factual Background

The compliant stems from events surrounding Melvin Jones's October 20, 2006 suicide. Construing the facts in the light most favorable to Plaintiffs, the following events occurred that afternoon. According to Plaintiffs, Melvin Jones went to his parents' backyard with a loaded .22 caliber rifle intending to engage in target practice. At around 2:15 p.m., Robert Jones, Melvin's father, went outside and learned that Melvin had called 911 to inform the emergency dispatcher of his suicidal intentions. Melvin requested an ambulance specifically because "Robert had heart trouble and Melvin did not want anything bad to happen to anyone else as a result of his conduct" (Doc. 2, ¶ 17). Robert then called Kay Jones, his wife and Melvin's mother, apprised her of the situation, and requested that she return home.

Sometime after the 911 call, local law enforcement officers arrived on the scene. The following Defendants were among those who responded to the emergency call: Bart Hileman, Ron Stamp, and Robbie McGee of the Union County Sheriff's Department; John Barr, John Wright, and Stephen Lawrence of the Illinois State Police; and Dale Foster and Bryan Watkins of the Anna

Police Department. Many emergency vehicles arrived at the scene, which Plaintiffs say only raised the tension.

Defendant Barr, along with Robert, attempted to negotiate with Melvin while officers simultaneously attempted to gain control of the site. This included establishing "sniper positions," even though Melvin never pointed the gun at anyone and promised that he would not hurt them. The officers believed Melvin's assurances and did not feel threatened.

When Kay arrived on scene, Defendants refused to allow her access to Melvin. Defendants instructed her "not to come any closer" and threatened to use handcuffs and place her in a police vehicle if she violated their instructions. An officer was instructed to "guard Kay and prevent her from moving" (Doc. 2, ¶ 33).

Robert, on the other hand, was eventually asked to leave Melvin's side. Though he had not interfered with the officers in any way, he was handcuffed and placed under arrest for obstruction of justice. While the negotiator continued to speak with Melvin, Robert was taken to the Union County Jail.

Minutes after Robert was removed from the scene, Melvin shot himself. Melvin was taken to Union County Hospital by ambulance and died at 4:00 p.m on October 20, 2006. Robert was later released, and no charges were filed against Robert or Kay.

### D. Analysis

**1. Plaintiffs' § 1985 Claims Against All Defendants**

The complaint alleges a cause of action against Defendants under 42 U.S.C. § 1985. Both the Anna and Union County Defendants move to dismiss these claims because Plaintiffs fail to allege the actual existence of any conspiracy as required by the statute. Plaintiffs admit to this defect and explain that they "no longer intend to pursue claims under section 1985" (Doc. 37).

Given Plaintiffs' concession that no viable § 1985 claims lie here, the Court grants

the motions to dismiss as to this issue and dismisses Plaintiffs' claims under § 1985.

**2. Plaintiffs' § 1983 Claims Against Foster, Watkins, Hileman, Stamp, and McGee**

Next, Defendants Foster, Watkins, Hileman, Stamp, and McGee seek dismissal of

Counts I and II, which involve Plaintiffs' Fourth Amendment claims as raised under § 1983.  In

assessing whether a complaint states a claim upon which relief can be granted, the Court looks for

two elements in a § 1983 cause of action: (1) whether Plaintiffs allege that they were deprived of

a federal right, and (2) whether Plaintiffs  allege that the person violating that right acted under color

of state law.  ***Gomez v. Toledo*, 446 U.S. 635, 640 (1980).**

Here, Plaintiffs allege that these Defendants, acting under color of state law, deprived

them of their Fourth Amendment right to be free from unreasonable seizures.[1]  In response,

Defendants argue that qualified immunity shields them from liability.  The Court uses a two-pronged

inquiry to determine if qualified immunity applies.  "First, we determine whether the plaintiffs'

claim states a violation of their constitutional rights.  Then, we determine whether those rights were

clearly established at the time the violation occurred."  ***Jacobs v. City of Chicago*, 215 F.3d 758,

766 (7th Cir. 2000).  *Accord Saucier v. Katz*, 533 U.S. 194, 200 (2001).**

In order to meet the first prong of the qualified immunity inquiry where a Fourth

Amendment violation is pled, Plaintiffs must establish two elements: (1) that Plaintiffs were seized

within the meaning of the Fourth Amendment and (2) that the seizure was unreasonable.  ***White v.

City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177

(7th Cir. 1994); *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994)**.

---

[1]  The Fourth Amendment protects individuals "against unreasonable searches and
seizures."

In *United States v. Mendenhall*, the Supreme Court stated the test for the first element as follows: "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." **466 U.S. 544, 554 (1980)**.

In this case, Plaintiffs' complaint alleges that Robert was placed in handcuffs and arrested for obstruction of justice, even though he had not interfered with the officers' operations. The complaint also alleges that Kay was prevented from moving and was told she would be handcuffed and placed in a squad car if she violated these instructions. Construing the facts in favor of Plaintiffs', the Court finds that the complaint sufficiently indicates that both Robert and Kay were seized within the meaning of the Fourth Amendment. As such, the Court looks to the second element, reasonableness, to determine if Plaintiffs have pled facts sufficient to allege a constitutional violation.

The reasonableness determination starts with the general notion that "[a]n official seizure is ordinarily unreasonable unless it is supported by probable cause." *Jacobs*, **215 F.3d at 772.** *Accord Michigan v. Summers*, **452 U.S. 692, 696 (1981).** Nonetheless, there are a litany of exceptions to the probable cause requirement, and courts must look at the circumstances as a whole in assessing the reasonableness requirement. *White*, **310 F.3d at 995 ("Whether or not a seizure is reasonable under this balancing act is determined by examining the totality of the circumstances.");** *see also Illinois v. McArthur*, **351 U.S. 326, 331-34 (2001).**

The question of reasonability creates a close call here. On the one hand, the police may, in certain circumstances, seize an individual while trying to obtain control over a crime scene or to facilitate public safety. But even assuming that there are circumstances where the police may seize an individual despite a lack of probable cause, any such seizure must remain reasonable. This

is a fact inquiry that goes beyond the pleadings. Indeed, the complaint explains that Melvin did not

threaten to harm anyone other than himself, and neither Kay nor Robert interfered with the police

investigation. Yet the seizures at issue included the actual arrest of Robert and the limitation of

Kay's movement, accompanied by the threat of arrest.

As facts are more fully developed, the circumstances may or may not support a

finding that the alleged seizures were reasonable. At this time, however, Defendants have not

established that Plaintiffs fail to state a plausible Fourth Amendment claim upon which relief can

be granted. More facts are needed to determine whether any seizure was reasonable, and as such,

dismissal under Rule 12(b)(6) is not warranted at this juncture.

Consequently, the Court cannot definitively determine whether any constitutional

right involved in this case was clearly established at the time of the incidents. But to the extent that

the Court has difficulty in making such a determination at this time, the Court notes that "a

complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."

***Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (emphasis added).** The Seventh Circuit

explains that dismissal is often inappropriate at this stage because "the plaintiff is not required

initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."

***Id.*; *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for**

**immunity and almost always a bad ground of dismissal . . . and when defendants do assert**

**immunity it is essential to consider facts in addition to those in the complaint.").**

In short, a definitive ruling as to whether any seizure was reasonable and whether

qualified immunity protects these Defendants requires the consideration of facts that are not yet

before the Court. This case is at the Rule 12(b)(6) stage. Accordingly, Defendants' Rule 12(b)(6)

motions to dismiss the § 1983 claims against Foster, Watkins, Hileman, Stamp, and McGee in

Counts I and II must be denied.

### 3. Plaintiffs' § 1983 Claims Against the City of Anna and Union County

The City of Anna and Union County also move this Court to dismiss Counts I and II against them. Specifically, Defendants argue that there is no allegation that any of the police officers' actions were based on an express policy.

As noted above, in raising a claim under§ 1983 against government officials, Plaintiffs must allege that the officials deprived them of rights secured by the federal constitution or laws. But to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom caused the constitutional violation and was "the moving force" behind the violation. *Estate of Sims v. County of Bureau*, **506 F.3d 509, 514 (7th Cir. 2007);** *see also Johnson v. City of Kankakee*, **260 Fed.Appx. 922, 926 (7th Cir. 2008) (citing** *Monell v. Department of Social Services of New York*, **436 U.S. 658, 691 (1978)).** There is no *respondeat superior* liability for municipalities under § 1983. *Belcher v. Norton*, **497 F.3d 742, 754 (7th Cir. 2007).** "Misbehaving employees are responsible for their own conduct," and units of local government are responsible only for their own policies, not for misconduct by their workers." *Id.* **(citing** *Lewis v. City of Chicago*, **496 F.3d 645, 656 (7th Cir. 2007)).**

Thus, unless there is an unconstitutional policy, there cannot be official capacity liability against a city. Stated another way, municipalities may be held liable under § 1983 when the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the municipalities '] officers." *Monell*, **436 U.S. at 690.** This notion of an official policy "often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over

time." ***Pembaur v. Cincinnati*, 475 U.S. 1292, 1299 (1986).** A municipality is therefore liable when there is an official policy which serves to deprive a defendant of a constitutional right. A municipality may also be liable where a person with final policy-making authority acts to deprive an individual of her constitutional rights. ***Looper Maint. Serv., Inc., v. Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999).**

Defendants argue that Plaintiffs have only alleged a *respondeat superior* claim. Plaintiffs' assertion, however, is that "The decision to seize Kay [and Robert] was the official policy of Union County . . . and the City of Anna" (Doc. 2, ¶¶ 50, 56). The complaint also alleges that Foster, Watkins, Hileman, Stamp, and McGee have final policy-making authority in their respective police departments. As the case is currently at the Rule 12(b)(6) stage, there is no evidence before the Court indicating anything to the contrary. Plaintiffs, therefore, have sufficiently pled a claim upon which relief can be granted and Defendants' motions to dismiss the § 1983 claims against the City of Anna and Union County in Counts I and II are denied.

**4. Plaintiff's Claim for Wrongful Death Under Illinois Law**

Finally, the Defendants assert that Illinois law immunizes them from the wrongful death claims in Count III. Specifically, Defendants allege that the Local Government and Governmental Employees Tort Immunity Act, **745 ILCS 10/4-102, 2-109, and 2-202**, provides immunity for the Defendants' actions. Additionally, Defendants argue that even if they are not immune, they had no special duty to the Plaintiffs and therefore are not liable under a wrongful death theory.

Because the nature of the immunity granted by **§ 4-102** is the most expansive of the statutes cited by Defendants, the Court begins there. **Section 4-102** provides:

Neither a local public entity nor a public employee is liable for failure

-9-

> to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

Plaintiffs argue that in responding to Melvin's 911 call, the police were not undertaking "police protection or service," such that § 4-102 does not shield Defendants from liability. Instead, Plaintiffs argue that Defendants were providing "protective" services, which they view as separate and distinct from police services. Plaintiffs apparently attempted to draft around the immunity statute by including the incomprehensible statement: "Defendants were aware of the particular danger of suicide and their conduct in protecting [Melvin] was not police protection or service, but rather protective" (Doc. 2, ¶ 63).

But the mere inclusion of such language does not mean that Defendants are not actually immune. Indeed, the Court must look to the particular facts pled by Plaintiffs in order to determine whether a plausible claim for relief exists so as to survive a Rule 12(b)(6) motion. Specifically, the Court must determine whether the police conduct as described in the complaint could plausibly fall outside the category of "police protection or service."

As far as the Court can surmise, Plaintiffs believe that police came to the scene to provide medical or mental health services insofar as they were there to either (1) treat Robert Jones's for any heart problems that might result during the ordeal,[2] or else (2) to convince Melvin Jones not to commit suicide. Illinois courts have indicated that police services "include crime prevention, crime investigation, crowd control, searching for missing persons, and traffic control." *Torres v. City of Chicago*, **816 N.E.2d 816, 819 (Ill.App.Ct. 2004) (citations omitted).** However, "[t]he

---

[2] This was the purported purpose of Melvin Jones when he made the 911 call in the first place.

responsibility for obtaining medical aid for injured persons involves no service characteristic of police functions" and therefore § 4-102 does not immunize police officers from liability for conduct involving medical services. ***Id.*** **(citing *Regalado v. City of Chicago*, 40 F.Supp.2d 1009, 1017 (N.D. Ill. 1999)).**

Even a generous reading of Plaintiffs' complaint leads only to the conclusion that the action by the Union County and Anna Defendants constituted "police protection or service." It is clear that all of the police officers present at the scene understood that they were dealing with an unstable individual with a loaded weapon. As such, there was a need to protect other civilians in the area. Even though the property was located in a secluded, rural area, the complaint makes it clear that Robert Jones and Melvin's three-year-old son, Matthew, were at the house when the suicide threat was initially made. Melvin also brought other civilians onto the scene by requesting medical assistance to ensure that, upon Melvin's suicide, his father could receive treatment for his heart condition if needed. Later, Kay Jones and various neighbors approached the scene. Clearly, the police who surrounded the area were there to ensure the safety of everyone present—as well as anyone who might later arrive—in light of the fact that Melvin was emotionally distraught and was threatening a violent act with a loaded weapon.

Furthermore, Defendants Foster and Watkins, the only Defendants employed by the City of Anna, are only mentioned in the complaint with respect to their actions in restraining Kay Jones from approaching Melvin. There is no allegation that either was involved in negotiating with Melvin or otherwise providing mental health or medical services. As such, the Court cannot construe the facts, as pled, to indicate that either was providing mental health or medical services. Rather, the complaint is clear that their conduct only encompassed police services.

Similarly, the complaint does not indicate that Defendants Hileman, Stamp, or

McGee, the only Defendants employed by Union County, were involved in providing mental health or medical services. Though Stamp and Hileman were the first to arrive and discussed Melvin's state of mind with Robert, it is not clear from the complaint that either of them negotiated with Melvin or encouraged him to reconsider his suicidal intent. Aside from this, Stamp and McGee are only mentioned insofar as they participated in Robert's arrest. Stamp and McGee's conduct unquestionably fall under the category of "police services."

The facts as pled by Plaintiffs do indicate that Hileman possibly oversaw the general operations at the house, but Plaintiffs do not specifically state that he was actually involved in any negotiations with Melvin. Indeed, only Defendant John Barr, an employee of the Illinois State Police, is said to have negotiated with Melvin.[3] As a result, the Court is unable to construe the complaint as alleging that Hileman's conduct constituted anything other than "police services."

Accordingly, the Court finds that the Union County Defendants and the Anna Defendants were in fact performing "police services" and are therefore shielded from liability under § 4-102. As a result, the Court must dismiss Count III with respect to the Union County Defendants and the Anna Defendants. Consequently, the Court need not reach the Defendants' other arguments with respect to the Tort Immunity Act.

### E. Conclusion

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss (Docs. 24 & 31).

---

[3] The parties should not take this analysis to indicate the Court's position as to whether Barr provided police services alone. Those particular facts have not been developed by the parties, and Barr has not participated in the filing of the motions at hand. Thus, the Court is unable to determine, and need not decide, whether or not Barr's conduct involved anything other than police services.

The Court **GRANTS** the motions to dismiss insofar as the Court **DISMISSES** Plaintiffs' § 1985 claims against all Defendants in Counts I and II and **DISMISSES** Plaintiffs' wrongful death claims against Foster, Watkins, Hileman, Stamp, McGee, Union County, and the City of Anna in Count III.

The Court **DENIES** the motions to dismiss the § 1983 claims against the Union County Defendants and the Anna Defendants in Counts I and II.

Consequently, Counts I and II remain pending against all Defendants. Count III remains pending only as to Defendants Barr, Wright, and Lawrence.

**IT IS SO ORDERED.**

**DATED this 30th day of September 2008.**

<u>**s/ Michael J. Reagan**</u>
**Michael J. Reagan**
**United States District Judge**