IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT JONES, individually and as** )
**a personal representative of the** )
**estate of Melvin D. Jones, and** )
**KAY JONES,** )
)
           **Plaintiffs,** )
**vs.** )   Case No. 07-CV-0606-MJR-DGW
)
**DEPUTY SHERIFF BART HILEMAN,** )
**SERGEANT RON STAMP,** )
**DEPUTY SHERIFF ROBBIE MCGEE,** )
**OFFICER JOHN BARR,** )
**OFFICER JOHN WRIGHT** )
**OFFICER STEPHEN LAWRENCE,** )
**OFFICER DALE FOSTER,** )
**OFFICER BRYAN WATKINS,** )
**CITY OF ANNA,** )
**and UNION COUNTY, ILLINOIS,** )
)
           **Defendants.** )

## MEMORANDUM AND ORDER

**REAGAN, District Judge**:

### A. Introduction

On August 27, 2007, Plaintiffs Robert Jones, individually and as the personal representative of Melvin Jones, and Kay Jones filed this action (Doc. 2). On November 5, 2008, Plaintiffs filed an amended complaint alleging deprivation of their Fourth Amendment rights under 42 U. S. C. §§ 1983, wrongful death, and deliberate indifference to a serious medical need (Doc. 69).

On December 3, 2008, Defendants Stephen Lawrence, Jonathan Wright, and John Barr moved for dismissal pursuant to **FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and (6)** (Doc. 80). Defendants argue that Counts 3 and 4 must be dismissed because they are entitled to either sovereign immunity or qualified immunity. They also argue that Count 4 must be dismissed

because Plaintiffs fail to state a claim upon which relief can be granted. On December 29, 2008, Plaintiffs filed their response in opposition (Doc. 88).

Having reviewed the parties' filings, this Court now **GRANTS IN PART AND DENIES IN PART** the Defendants' motion to dismiss (Doc. 80).

### B. Factual Background

The compliant stems from events surrounding Melvin Jones's October 20, 2006 suicide. Construing the facts in the light most favorable to Plaintiffs, the following events occurred that afternoon. Melvin Jones went to his parents' backyard with a loaded .22 caliber rifle intending to engage in target practice. At around 2:15 p.m., Robert Jones, Melvin's father, went outside and learned that Melvin had called 911 to inform the emergency dispatcher of his suicidal intentions. Melvin requested an ambulance specifically because "Robert had heart trouble and Melvin did not want anything bad to happen to anyone else as a result of his conduct" (Doc. 69, ¶ 17). Robert then called Kay Jones, his wife and Melvin's mother, apprised her of the situation, and requested that she return home.

Soon after the 911 call, local law enforcement officers arrived on the scene. Defendants John Barr, John Wright, and Stephen Lawrence of the Illinois State Police were among those who responded to the emergency call. Other officers who arrived on the scene included Bart Hileman, Ron Stamp, and Robbie McGee of the Union County Sheriff's Department, and Dale Foster and Bryan Watkins of the Anna Police Department. Many emergency vehicles arrived at the scene, which Plaintiffs say only raised the tension.

As the first officers to arrive, Hileman and Stamp drew their weapons and pointed them at Melvin. Robert told them about the conversation he had been having with Melvin regarding his suicidal intentions and the reasons for them. He also told them that Kay, Melvin's mother, was

on her way to the scene in order to convince Melvin not to hurt himself.

Defendant Barr appeared in plain clothes and identified himself as a trained police negotiator. In fact, only Officer Wright was trained to negotiate with suicidal subjects, but he never attempted to communicate with Melvin. Instead, Barr, along with Robert, attempted to negotiate with Melvin while officers simultaneously tried to gain control of the site. This included Defendant Lawrence establishing a "sniper position," even though Melvin never pointed his gun at anyone and promised that he would not hurt them. In fact, the officers believed Melvin's assurances and did not feel threatened. Nonetheless, Melvin could see Lawrence and other armed officers positioning for a clear shot, which created further tension.

When Kay arrived on scene, Defendants refused to allow her access to Melvin. Defendants instructed her "not to come any closer" and threatened to use handcuffs and place her in a police vehicle if she violated their instructions. An officer was instructed to "guard Kay and prevent her from moving" (Doc. 69, ¶ 33). Robert told Barr that the officers needed to let Kay talk to Melvin, because she was the only one who could get through to him, but Barr refused.

Robert was eventually asked to leave Melvin's side. Though he had not interfered with the officers in any way, he was handcuffed and placed under arrest for obstruction of justice. While Barr continued to speak with Melvin, Robert was taken to the Union County Jail.

Minutes after Robert was removed from the scene, Melvin shot himself. Melvin was taken to Union County Hospital by ambulance and died at 4:00 p.m on October 20, 2006. Robert was later released, and no charges were filed against Robert or Kay.

### C. Legal Standards Governing a Motion to Dismiss

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible

on its face." ***Bell Atlantic Corp. V. Twombly*, --U.S.--, 127 S.Ct. 1955, 1965 (2007);** *EEOC v. Concentra Health Services, Inc.*, **496 F.3d 773, 776 (7th Cir. 2007).**

Stated another way, the question on a Rule 12(b)(6) motion is whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which the suit rests. *Swierkiewicz v. Sorema N.A.*, **534 U.S. 506, 512 (2002);** *Mosely v. Board of Education of City of Chicago*, **434 F.3d 527, 533 (7th Cir. 2006).** Additionally, although federal complaints need only plead claims, not facts, the pleading regime created by *Bell Atlantic* requires the complaint to allege a plausible theory of liability against the defendant. *Sheridan v. Marathon Petroleum Co., LLC*, **530 F.3d 590, 596 (7th Cir. 2008);** *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, **520 F.3d 797, 803-04 (7th Cir. 2008).**

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. **526 F.3d 1074, 1083 (7th Cir. 2008).** "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.*; *Accord Pugh v. Tribune Co.*, **521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").**

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, **475 F.3d 824, 833 (7th Cir.),** *cert. denied*, **128 S. Ct. 357 (2007);** *Marshall v. Knight*, **445 F.3d 965, 969 (7th Cir. 2006);** *Corcoran v. Chicago Park District,* **875 F.2d 609, 611 (7th Cir. 1989).**

### D. Analysis

**1. Sovereign Immunity**

Defendants Lawrence, Wright, and Barr move this Court to dismiss the wrongful death claims against them in Count 3, arguing that they are protected under the doctrine of state sovereign immunity. Plaintiffs, on the other hand, argue that sovereign immunity does not shield Defendants from liability for unconstitutional conduct.

The Court dealt with this issue in a previous order, wherein the wrongful death claims against these same Defendants were dismissed under the doctrine of state sovereign immunity (see Doc. 60). Defendants argue that sovereign immunity protects them from liability for the wrongful death claim for the same reasons it did in the Court's prior decision. Therein, the Court explained that the Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." ***Hans v. Louisiana*, 134 U.S. 1, 13 (1890).** By its express terms, the Eleventh Amendment bars federal courts from hearing suits against a state brought by citizens of any other state. **U.S. CONST. AMEND. XI.**[1] Additionally, the United States Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by their own citizens as well as those brought by citizens of other states. ***See Ameritech Corp. v. McCann*, 297 F.3d 583, 585 (7th Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).**

While the Eleventh Amendment does not bar federal jurisdiction over all state-law causes of action, it does bind federal courts to apply state rules of immunity where state-law causes

---

[1] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

of action are alleged. *Magdziak v. Byrd*, **96 F.3d 1045, 1048 (7th Cir. 1996)**. The Court, therefore, looks to Illinois law to determine whether the Defendants enjoy sovereign immunity from Plaintiffs' wrongful death claims.

The Illinois State Lawsuit Immunity Act, **745 ILCS 5/1**, provides that "the State of Illinois shall not be made a defendant or party in any court," except as provided by the Illinois Court of Claims Act, **705 ILCS 505/8.** That Act, in turn, vests jurisdiction over state tort claims against the State of Illinois in the Illinois Court of Claims.

The Illinois Supreme Court has determined that an action is against the State, and not against a named individual, when

> there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State . . . .

*Healy v. Vaupel*, **549 N.E.2d 1240, 1247 (Ill. S.Ct.1990).** However, the court also noted that state actors are not protected by the doctrine of sovereign immunity when sued in their individual capacities for violations of statutory or constitutional law. *Id.*

In its previous Order, the Court determined that sovereign immunity applied because there was nothing in the complaint to indicate that the Defendants were acting as individuals rather than as state actors (Doc. 60). The Court also refused to apply the exception for violations of constitutional law, because the only unconstitutional conduct alleged in the original complaint pertained to the seizure of Robert and Kay Jones. At that time, it was clear that the wrongful death allegations did not depend on the alleged unconstitutional seizures of Robert and Kay, but rather general principals of negligence.

Plaintiffs have apparently attempted to change this outcome by adding a constitutional claim in Count 4 alleging that Defendants were deliberately indifferent to Melvin's serious medical needs. Specifically, Plaintiffs allege that the Defendants were aware of his suicidal intentions, but refused to take obvious measures to prevent his death. The wrongful death claim in Count 3, on the other hand, alleges that Defendants breached their duty of care to Melvin by engaging in conduct that was "willful, wanton, careless, unreasonable, and negligent," as they failed to provide Melvin with available medical care that could have prevented his death (Doc. 69, ¶¶ 64–68).

Whether the wrongful death claim now depends on the officers' deliberate indifference to Melvin's serious medical needs so as to remove the protections of sovereign immunity creates a close call. On the one hand, the conduct alleged in the wrongful death claim is similar to Plaintiffs' allegations of deliberate indifference. On the other hand, it is clear that the wrongful death claim still depends entirely on a theory of negligence, which even if proved would not necessarily rise to the level of a constitutional violation. If permitted to go forward, Plaintiffs would not have to prove that the Defendants committed a constitutional violation in order to prevail on their wrongful death claim. Indeed, they would only have to show that the Defendants were negligent—not that they were deliberately indifferent.

Construing the two claims together, it appears that Plaintiffs claims are really offering alternate theories of culpability, such that the wrongful death claim, as alleged, does not depend on any constitutional violation. In other words, Plaintiffs claim that the officers acted unconstitutionally in that they were deliberately indifferent to Melvin's serious medical needs (Count 4), but even if their conduct did not rise to this level, they were at the very least negligent in their handling of the situation (Count 3). As the Seventh Circuit stated in ***Richman v. Sheahan***

> [Plaintiff's] state wrongful death and survival claims are not dependent on the alleged constitutional violation, but instead on a theory of wilful and wanton negligence, so the exception to immunity for unconstitutional conduct does not apply.

**270 F.3d 430, 442 (7th Cir. 2001).** So too is the case here, and Defendants are protected from Plaintiffs' wrongful death claims under the doctrine of state sovereign immunity.

Accordingly, Plaintiffs' wrongful death claims against Lawrence, Wright, and Barr in Count 3 must be dismissed.

## 2. Qualified Immunity

Next, Defendants Lawrence, Wright, and Bar seek dismissal of Count 4, which involves Plaintiffs' claim that Defendants were deliberately indifferent to Melvin's serious medical needs. Though the complaint never explicitly provides a constitutional or statutory basis for the deliberate indifference claim, Plaintiffs are obviously raising a claim under **42 U.S.C. § 1983**, and are alleging a violation of the Eighth Amendment's restriction against cruel and unusual punishment. Additionally, the claims are brought against the Defendants in their individual capacities only.[2]

Defendants argue that qualified immunity shields them from liability. The Court uses a two-pronged inquiry to determine if qualified immunity applies. "First, we determine whether the plaintiffs' claim states a violation of their constitutional rights. Then, we determine whether those rights were clearly established at the time the violation occurred." ***Jacobs v. City of Chicago*, 215**

---

[2] The complaint never indicates that the claims are being brought against the Defendants in their official capacities. To the extent that Plaintiffs may have attempted to bring a § 1983 action against Defendants in their official capacities, the Court notes that Congress's enactment of § 1983 did not "override the traditional sovereign immunity of the States." ***Quern v. Jordan*, 440 U.S. 334, 341 (1979). *Accord Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 758 (7th Cir. 1999); *Kroll v. Board of Trustees of University of Illinois*, 934 F.3d 904, 909 (7th Cir. 1991),** *cert. denied***, 502 U.S. 941 (1991).** Thus, such "[f]ederal suits against state officials in their official capacities are barred by the Eleventh Amendment." ***Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).**

**F.3d 758, 766 (7th Cir. 2000).  *Accord Saucier v. Katz*, 533 U.S. 194, 200 (2001).**

Therefore, the Court first assesses whether Plaintiffs' complaint actually includes facts that would support a deliberate indifference claim.³ The Supreme Court has recognized that deliberate indifference to the serious medical needs of a detainee may constitute cruel and unusual punishment under the Eighth Amendment. ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976);  *Farmer v. Brennan*, 511 U.S. 825 (1994)**.  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it does not include "negligen[ce] in diagnosing or treating a medical condition." ***Estelle*, 429 U.S. at 106;** *see also **Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996), cert. denied, 519 U.S. 897 (1996)**. To prevail on such a claim, a detainee faces two requirements:

> A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 . . . (1994) (internal quotations omitted); *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002). A serious medical condition is . . . one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir.2005). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 . . . (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 . . . (1991)). The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer*, 511 U.S. at 837 . . . This is not to say that a prisoner must establish that

---

³ Typically, deliberate indifference claims arise in cases where the plaintiff is an inmate in a correctional facility, or at least under arrest. Though the complaint never makes an outright allegation that Melvin was a detainee, Defendants never challenge the claim on that basis. The Court draws the inference from all of the allegations in the complaint that Melvin was a detainee, because the officers had their guns trained on him and refused to let others on the scene have access to him, including his mother.

> officials intended or desired the harm that transpired. *Walker*, 293 F.3d at 1037. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *Id.* Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 . . . .

***Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).** The Seventh Circuit's decisions following this standard require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. A defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

Construing the facts in the light most favorable to Plaintiffs, it is clear that the objective component is satisfied. The complaint specifically states that all of the officers were aware of Melvin's suicidal intentions and that it was obvious that Melvin needed on-the-scene psychological treatment by an individual trained in suicide negotiations.

Viewing all allegations in favor of Plaintiffs, it is also clear that the subjective component is met. The complaint alleges, and the Defendants do not deny, that all officers on the scene were aware that Melvin was threatening to commit suicide and was carrying a loaded weapon with which to carry out this act. Consequently, the complaint sufficiently alleges that the Defendants were aware of the substantial risk to Melvin's life given his mental state. Additionally, the complaint includes sufficient allegations for a showing that the officers acted with deliberate indifference. Plaintiffs allege that the Defendants disregarded the obvious risk to Melvin by preventing proper medical personnel from interacting with him. Defendant Barr was engaged in conversation with Melvin throughout this period, but according to the complaint, he was not trained in suicide negotiations. Additionally, the complaint alleges that Barr prevented others from speaking with Melvin, including his mother, whom Robert told officers was likely the only person

who could get through to him. Also, Defendant Wright is alleged to have been the only officer at the scene trained in suicide negotiations, but refused to communicate with Melvin. And Plaintiffs further claim that Defendant Lawrence took up a sniper position that Melvin could see, which raised the tension considerably.

These allegations are sufficient to state a claim that Defendants were deliberately indifferent to Melvin's serious medical needs.[4] Accordingly, the Court moves to the second prong of the qualified immunity inquiry: whether the right at issue was clearly established at the time the alleged violation occurred. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, **533 U.S. 194, 201 (2001).** "The right the official is alleged to have violated must have been 'clearly established' in a... particularized and relevant sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* **at 202 (citing** *Anderson v. Creighton,* **483 U.S. 635, 640 (1987)).** "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, **533 U.S. at 202.**

Accepting as true all well-pled factual allegations, and drawing all reasonable inferences in Plaintiffs' favor, the officers encountered the following situation. Melvin had declared his intent to commit suicide and was holding a loaded weapon. However, he sat calmly and was willing to speak peacefully with Robert and the officers. He also told the officers that he would not hurt anyone, and they believed him. At several points, Melvin even put his weapon down. The

---

[4] The same reasoning requires denial of the Defendants' request that Count 4 be dismissed because Plaintiffs have failed to state a deliberate indifference claim sufficient to withstand Rule 12(b)(6). *See infra* **section D(3).**

question is whether it would have been clear to a reasonable officer that failing to permit trained or qualified medical personnel to interact with Melvin constituted deliberate indifference to Melvin's serious medical needs under these circumstances.

Plaintiffs point to *Sanville v. McCaughtry*, **266 F.3d 724 (7th Cir. 2001),** in support of their position that qualified immunity is not warranted here. In *Sanville*, a mentally ill inmate, who had engaged in bizarre behavior that suggested he was contemplating suicide, covered the windows of his cell so that guards could not look in. They left him unsupervised for five hours, and he hung himself during this period. His mother brought a deliberate indifference claim against the guards, and they in turn argued that they were entitled to qualified immunity. The Seventh Circuit found that qualified immunity did not shield the guards from liability. In determining whether the right was clearly established, the Court explained:

> There can be little debate that it was clearly established, long before 1998, "that prison officials will be liable under Section 1983 for a pretrial detainee's suicide if they were deliberately indifferent to a substantial suicide risk." *Hall* [*v. Ryan*], 957 F.2d [402,] 406 [(7th Cir. 1992)]. Further, "[i]t was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk. Deliberate indifference to a prisoner's medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Id.* at 404–05.

*Id.* **at 740–41.**

Obviously the circumstances the officers faced here are different from those in *Sanville*, where guards completely ignored a suicidal inmate and made no attempt to monitor his conduct within his cell. Here, officers were directly confronted with a suicidal individual who had possession of a loaded weapon, and it is clear that Barr made at least some effort to convince Melvin not to commit suicide. But despite the differences between the cases, the Court declines to find that

Barr and Wright are entitled to qualified immunity at this juncture.

Barr allegedly had no training in suicide negotiations. Nonetheless, the complaint alleges that he undertook the task of trying to talk Melvin out of killing himself, even though Wright was trained in suicide negotiations. A reasonable officer would have understood that the isolating Melvin and undertaking the suicide negotiations on his own, despite the fact that he was unqualified to do so and another qualified officer was available, was unlawful. Accepting all well-pled facts as true, and drawing all reasonable inferences in Plaintiffs' favor, the Court is compelled to find that Plaintiffs have sufficiently alleged facts to support a finding that Barr's conduct violated Melvin's clearly established rights. As a result, Barr is not entitled to qualified immunity.

Likewise, Wright is not entitled to qualified immunity. Despite being the only officer on the scene qualified to conduct suicide negotiations, he never attempted to communicate with Melvin, even though there was no apparent impediment to his doing so. A reasonable officer would have understood that the failure to participate in negotiations under these circumstances constitutes deliberate indifference to Melvin's serious medical needs. Accepting all well-pled facts as true, and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently alleged facts to support a finding that Wright's conduct violated Melvin's clearly established rights. As a result, Wright is not entitled to qualified immunity.

The Court notes that its findings with respect to Barr and Wright owe a great deal to the fact that this case is only at the 12(b)(6) stage. As the Seventh Circuit explained,

> a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."

***Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).**

However, Lawrence's conduct presents one of the rare instances where a finding of qualified immunity is warranted based upon the pleadings alone. The complaint alleges only that Lawrence set up a sniper position and trained his gun on Melvin, thereby raising the tension. The Court cannot find this conduct unreasonable in light of the fact that the officers were confronted with a distraught individual, who also had possession of a loaded weapon. Despite the fact that Melvin was generally peaceful and indicated he would not hurt anyone, the officers' concern was that Melvin's disposition could suddenly change, such that he might endanger others in his compromised mental state. The need to take some protective measures appears unavoidable, even construing the facts in the light most favorable to the Plaintiffs. Furthermore, there is no allegation that Lawrence's conduct actually prevented Wright or any other medical personnel from accessing Melvin. As a result, the Court cannot find that Lawrence's conduct under these circumstances was a violation of Melvin's clearly established rights.

As a result, the Court dismisses Plaintiffs' deliberate indifference claims against Defendant Lawrence (Count 4), as he is entitled to qualified immunity.

### 3.  Failure to State a Claim Upon Which Relief Can be Granted

Finally, Defendants argue that the deliberate indifference claim must be dismissed because Plaintiffs fail to state a claim upon which relief can be granted. The Court has already addressed why this contention is unavailing in its earlier discussion regarding the first prong of the qualified immunity issue. ***See supra* fn. 4 and accompanying text.**

### E. Conclusion

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES**

**IN PART** Defendants' motion to dismiss (Doc. 80). The Court **GRANTS** the motion insofar as Plaintiffs' wrongful death claims against Defendants Lawrence, Wright, and Barr (Count 3) are hereby **DISMISSED** under the doctrine of sovereign immunity. Additionally, the Court **GRANTS** the motion insofar as Plaintiffs' deliberate indifference claim (Count 4) against Defendant Lawrence is **DISMISSED**, as he is entitled to qualified immunity.

However, the Court **DENIES** the motion insofar as it **FINDS** that Defendants Barr and Wright are not entitled to qualified immunity with respect to Plaintiffs' deliberate indifference claim (Count 4).

At this time, only Counts 1 and 2 remain pending as to Defendant Lawrence. Counts 1, 2, and 4 remain pending as to Defendants Barr and Wright. All four counts remain pending against all other Defendants.

**IT IS SO ORDERED.**

**DATED this 2d day of February 2009.**

                                            **s/ Michael J. Reagan**
                                            **Michael J. Reagan**
                                            **United States District Judge**